425 So.2d 388 (1982)
ACADIAN HERITAGE REALTY, Plaintiff-Appellee,
v.
CITY OF LAFAYETTE, et al., Defendants-Appellants.
No. 82-558.
Court of Appeal of Louisiana, Third Circuit.
December 27, 1982.
*389 J. Minos Simon, Lafayette, for plaintiffappellee.
Voorhies & Labbe, Marc W. Judice, Lafayette, for defendants-appellees-appellants.
Domengeaux & Wright, Bob F. Wright, Lafayette, for defendants-appellants-appellees.
Before GUIDRY, FORET and STOKER, JJ.
STOKER, Judge.

MOTION TO DISMISS
The plaintiff-appellee, Acadian Heritage Realty (Acadian), moves to dismiss the appeals of the defendants, the City of Lafayette, Jerry Trumps, Glenn Weber, and The Daily Advertiser Independent, Inc., d/b/a The Daily Advertiser. The defendants appeal from a judgment rendered by the Honorable Guy E. Humphries, Jr., Judge Ad Hoc for the Fifteenth Judicial District, dismissing a rule for constructive contempt brought by the plaintiff, Acadian.
At the request of the judges of the Fifteenth Judicial District themselves, the Supreme Court ordered them recused in this case. Judge Humphries was assigned as Judge Ad Hoc, and heard the rule in which the plaintiff charged the defendants with constructive contempt of court. Judge Humphries dismissed the rule. After judgment on the contempt rule dismissing the rule, defendant The Daily Advertiser Independent, Inc., obtained on August 11, 1982, an order of appeal from Judge Ronald Cox, one of the recused judges. On August 16, 1982, defendants City of Lafayette, Jerry Trumps, and Glenn Weber obtained an order of appeal from Judge John Rixey Mouton, Sr., also one of the recused judges. On September 9, 1982, the latter defendants obtained an additional order of appeal from Judge Humphries. (The newspaper did not obtain an appeal order from Judge Humphries.) Plaintiff-appellee Acadian filed motions to dismiss the two appeals thus granted.
The appellee contends that:
1. Because of the recusation order, Judge Cox and Judge Mouton were without power or authority to grant the appeals.
2. The appeal order signed by Judge Humphries is null, and the trial court became divested of jurisdiction over the litigation by the appeal order signed by Judge Mouton.
3. The appeal of the City of Lafayette, Jerry Trumps, and Glenn Weber is frivolous and presents nothing for review by the Court of Appeal.
Before dealing with Acadian's contentions we note an issue, not raised by the parties, which should be addressed. The appellants prevailed in this matter. Acadian lost and the judgment was in favor of appellants. However, The Daily Advertiser was condemned to pay all costs of the contempt rule. Ordinarily parties who prevail in the trial are deemed to have no right of appeal as they are not parties "aggrieved" by a judgment. The test of aggrievement has been applied broadly. See, for example, our decision in Brock v. Tidewater Construction Company, 318 So.2d 100 (La.App. 3rd Cir.1975).
*390 In our opinion defendants-appellants City of Lafayette and its two employees have shown sufficient possibility that they have been aggrieved by the trial court's judgment and that the matter should be considered on its merits. Whether they have actually been aggrieved by the trial court's judgment will be reserved for consideration on the merits. The Daily Advertiser is "aggrieved," if for no other reason, because it was assessed with the costs of the contempt rule.
Although we do not reach the merits, we will point out that the record reveals the reason for the appeals, at least insofar as concerns the City of Lafayette, Jerry Trumps and Glenn Weber. The written reasons for judgment of the trial court (Judge Humphries) contains the following conclusion:
"There is no evidence that the City of Lafayette and its two (2) employees, Mr. Trumps and Mr. Weber, did anything that could be considered as contemptuous conduct. The Court, therefore, holds that they have not committed any acts of contempt." (Emphasis added)
Contrary to this conclusion concerning the City, Trumps and Weber, Judge Humphries held that the Daily Advertiser was guilty of contemptuous acts through publications which appeared in its newspaper. However, the judge concluded that the newspaper could not be punished because of the strong protection afforded by the First Amendment to the U.S. constitution.
The judgment presented to Judge Humphries following his reasons for judgment contained the following language:
"When after hearing the evidence, the Court believing that contemptuous acts have been proven but that they do not constitute a clear present and eminent danger to the due administration of justice..."
This language in the judgment clearly applied only to The Daily Advertiser and not to the City, Trumps and Weber. These parties brought a rule seeking to have the judgment amended to reflect that they were not guilty of contemptuous acts at all and that language quoted from the judgment applied only to the newspaper. Judge Humphries refused to grant the requested relief.
In their written petition for appeal the City of Lafayette, Trumps and Weber recited the above facts and limited their petition of appeal to a request that the judgment be reformed to conform to the written reasons for judgment. In other words, these three appellants are appealing the judgment because it carries the clear imputation that they had been guilty of acts contemptuous of the court.
The Daily Advertiser is in a different position altogether. Judge Humphries in his written reasons held they were guilty of contemptuous acts. Hence, the wording of the judgment does apply to them. Certainly, under the tests discussed in Brock v. Tidewater Construction Company, supra, the newspaper should be allowed to have the trial court's holding considered on appeal despite the fact that the trial court held it could not be punished (and therefore no judgment could be rendered against it.) We, of course, express no opinion as to the merits of the matter.
In one sense the judgment was actually adverse to The Daily Advertiser. The newspaper was assessed with all the costs of the proceedings. In his reasons for judgment Judge Humphries commented: "Because the conduct of The Daily Advertiser has brought about this particular litigation, the Court is of the opinion that it should be and is cast for costs of this particular rule." The judgment so provided. We make no comment on this ruling, but we do hold that it makes the judgment appealable as to The Daily Advertiser on this issue at least.
Therefore, we are of the opinion that appellants are aggrieved by the trial court's judgment, and they are not barred from appealing simply because the judgment appealed from was in their favor dismissing the contempt rule brought by Acadian. However, for reasons we will explain, the appeal of The Daily Advertiser must be dismissed for failure to timely take a valid *391 appeal. As noted above, The Daily Advertiser's order was signed by Judge Ronald Cox only, and he was a recused judge.
We will now consider the contentions made by Acadian in support of its motions to dismiss the appeals.

THE RECUSED JUDGES LACKED THE POWER OR AUTHORITY TO GRANT APPEALS
The plaintiff cites two cases which would seem to require that the appeals be dismissed because the orders were granted by recused judges. In State v. Price, 274 So.2d 194 (La.1973), the State failed to file an appellate record before the legal return date and instead asked for an extension of time from a District Judge who had recused himself. The pertinent language is as follows:
"Articles 916 and 919 of the Code of Criminal Procedure recognize the right of the "trial court" to extend the return date. Judge McClendon was a judge of that "trial court", but he had been recused "in the case". The power and authority for him to act as judge in this particular case for any and all reasons ceased at the moment of recusal. Art. 673, C.Cr.P. With the appointment of Judge Caldwell as judge ad hoc, the power and authority to act in this case vested in Judge Caldwell. Art. 676.
"These provisions of the Code of Criminal Procedure are based upon similar provisions in the Code of Civil Procedure, and interpretation of the latter provisions is pertinent here. It has long been recognized in our civil procedure that once a judge is recused, or a motion for his recusal has been filed, he has no power to act (except to appoint the proper person to sit ad hoc when the law provides for such an appointment). Any action taken by a recused judge is an absolute nullity. State v. Judge of Twenty-First Judicial District, 37 La.Ann. 253 (1885); State v. Judge of Twenty-Second Judicial District Court, 39 La.Ann. 994, 3 So. 91 (1887); Jones v. Cunningham, 157 La. 208, 102 So. 309 (1924); State v. Savoy, 207 La. 982, 22 So.2d 402 (1945).
"In considering the particular action taken by a recused judge, our courts have made no distinction between ministerial and judicial acts. We have determined that no action may be performed by the recused judge. Jones v. Cunningham, supra; State v. Savoy, supra. The theory of recusation is based upon public policy, for it is applied not only for the protection of the litigants but generally to see that justice is done by an impartial court. It is, therefore, for the sake of appearance to the general public as well as protection against the acts themselves that a judge be prohibited from any activity in a case in which he has been recused. Furthermore, since the extension of a return date requires the exercise of discretion or judgment, there can be no argument that this act was simply ministerial. The order of the judge ad hoc admits of the discretionary right of the extension of the return date of the appeal by the trial court. Moreover, mandamus could not lie to compel extension of a return date although our law thoroughly protects by other procedures the right to a late lodging of an appeal where the tardiness in lodging the appeal is assessed against court personnel."
Although State v. Price, supra, was a criminal case, the court's opinion made it clear that the principle applied equally to civil cases.
In Jones v. Cunningham, 157 La. 208, 102 So. 309 (1924), a District Court judge was himself the plaintiff and recused himself in the case. He was unable to obtain the services of another judge to act as judge ad hoc. Under the circumstances the judge in his individual capacity (acting through his attorneys) appeared in court before himself in his judicial capacity and moved for a preliminary default.
On the question of the power of a recused Judge to rule on a motion of preliminary default, the Court interpreted the Code of Practice, article 311, reasoning:
"I do not think it is necessary, for the purposes of this application, to decide whether the entry of a default is a ministerial or a judicial act.

*392 The Code of Practice, art. 311, reads:
"Such judgment may be obtained by moving for it in court, but it consists merely in a statement on the records of the court, showing that the defendant has failed to appear." (Writer's italics.)
The "records of the court" referred to in the article are the minutes of the court; and an entry on the minutes of the court showing that default has been taken is essential. Adler v. Wolff et al., 36 La.Ann. [169] at page 175. The default is "obtained" by "moving for it in court"; that is to say, by appearing in court before a judge authorized to preside over the tribunal, and empowered to hear and determine the issues between the parties. Quoad the two cases referred to in his application, relator is clearly without such authority or power. When the orders of recusation were entered, relator's functions became confined solely to the selection of a judge ad hoc to try the cases, and to review and revise the order appointing the judge ad hoc. State v. Woods, 124 La. 738, 50 So. 671. He was stripped of all other authority and power, including the power to grant a preliminary default, which is one of the steps provided by law in the hearing and determining of causes between litigants."
By similar token, our Code of Civil Procedure article 2121, states: "An appeal is taken by obtaining an order therefor ... from the Court which rendered the judgment." Applying the reasoning of Jones, "from the court" means that an order of appeal must be granted by a Judge authorized to preside over the tribunal and empowered to hear and determine the issues between the parties.
For the reasons given in the Price and Jones cases we are of the opinion that the recused judges lacked the power or authority to grant the appeals.

THE ORDERS OF APPEAL SIGNED BY THE RECUSED JUDGES DID NOT DIVEST THE TRIAL COURT OF JURISDICTION
We find no merit to Acadian's second contentionthe contention that Judge Humphries' order of appeal was a nullity because the order of appeal signed by Judge Mouton divested the trial court of jurisdiction. On the contrary Judge Mouton's order of appeal was null because he was recused with the consequencies related above. Hence, Judge Humphries' order of appeal as to the City, Trumps, and Weber was valid.

THE APPEAL OF THE CITY AND ITS EMPLOYEES IS NOT FRIVOLOUS AND DOES NOT FAIL TO PRESENT ANY ISSUE FOR REVIEW ON APEAL
A third ground of dismissal urged alternatively by Acadian, the plaintiff-appellee, is that with respect to the City of Lafayette and its two employees the appeal is frivolous and presents nothing for review on appeal. Acadian takes the position that these appellants were vindicated by the trial court and the contempt rule was dismissed as against them. They were not assessed any costs.
Without treating the procedural questions of whether an appeal may be dismissed on the ground that it is frivolous, we observe that we have already answered Acadian's complaints in this regard. Actually, it is clear from Acadian's motion that this third ground for dismissal, urged alternatively, is that, having prevailed, these three defendants have nothing to complain of on appeal. For the reasons we have given above this ground is without merit.
Parenthetically we observe that Acadian has construed too narrowly the relief sought by the City, Trumps and Weber. The final paragraph of Acadian's motion as to them summarizes Acadian's position:
"The appeal taken by these appellants presents to this court appellants' desire to have Judge Humphries' written reasons for judgment included in the judgment of dismissal, and nothing else. Appellants' appeal therefore presents no issue legally cognizable by this Honorable Court, for *393 as much as the Code of Civil Procedure prohibits including the reasons for judgment in a formal judgment. Appellants' appeal is therefore frivolous."
The trouble is that the judgment signed by Judge Humphries did include a portion of his reasons for judgment. The City and its employees contend that the portion of the reasons for judgment included in the judgment does not conform to the written reasons for judgment. We agree that written reasons should not be included in a formal judgment. LSA-C.C.P. art. 1918. Had the trial court's judgment not made reference to its findings as it did, the City and its employees would have no complaint. As noted, however, the judgment did state findings which these three appellants urge in their appeal is incorrect as to them. They want the reference to findings of contempt to be stated correctly (as they see it) or left out entirely.
For the foregoing reasons mover has too narrowly construed the relief sought on appeal by the City, Trumps and Weber.

CONCLUSION
For the foregoing reasons the motion to dismiss the appeal of The Daily Advertiser Independent, Inc., d/b/a The Daily Advertiser is granted for failure of this appellant to timely appeal. Accordingly, the appeal of this appellant is dismissed. The motion to dismiss the appeal of the City of Lafayette, Jerry Trumps, and Glen Weber is denied.
The costs of this proceeding are assessed one-half to Acadian Heritage Realty and one-half to The Daily Advertiser Independent, Inc.
MOTION DENIED AS TO CERTAIN APPELLANTS; GRANTED AS TO THE ONE APPELLANT.